UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL BOYD, on behalf of himself and
all others similarly-situated,

                              Plaintiffs,

          v.

PINNACLE ATHLETIC CAMPUS, LLC,
et al.,

                              Defendants.
_____

REPORT & RECOMMENDATION

19-CV-6795W

## PRELIMINARY STATEMENT

Plaintiff, Michael Boyd, individually and on behalf of all other persons similarly situated, commenced this action on October 28, 2019, against Pinnacle Athletic Campus, LLC ("Pinnacle"), individual defendants Daniel Bree and Sharon Cardarelli, and John and Jane Does # 1–10 (who are described as "as-yet unidentified owners, officers, shareholders, and managers of Pinnacle") (collectively, "defendants"). (Docket # 1 at 1 and ¶ 20). Currently pending before the Court is plaintiffs' motion to amend the complaint. (Docket # 41).

## BACKGROUND

Boyd filed this lawsuit against Pinnacle, his former employer, as a collective action under the Fair Labor Standards Act ("FLSA") and a putative class action under the New York Labor Law ("NYLL") alleging that Pinnacle failed to pay him overtime, compensate him for all hours worked, and furnish him with accurate wage notices. (Docket # 1). In his complaint, Boyd alleges that, as a result of two separate policies and practices in place at

Pinnacle, he and other similarly situated employees were not properly compensated for overtime they worked. The first policy concerned Pinnacle employees who were employed in two different positions (one primary and one secondary) for which they were compensated at separate hourly rates. (*Id.* at ¶¶ 2-4). According to Boyd, in calculating overtime compensation, Pinnacle did not include the hours worked by the employees in their secondary positions and did not properly implement a weighted average hourly rate. (*Id.* at ¶¶ 2-4, 46, 54). As a result of this policy, Pinnacle allegedly failed to pay dual-position employees at the required overtime rate for hours they worked in excess of forty in a workweek. (*Id.*).

The second alleged unlawful policy concerned "time shaving" – a policy of arbitrarily reducing employees' total hours worked during a given week. (*Id.* at ¶¶ 5-6). According to Boyd, Pinnacle employees were required to record their weekly hours on time sheets submitted to Cardarelli at the end of each week. (*Id.* at ¶¶ 5, 33). Cardarelli then "routinely reduce[d] hours at her whim and provide[d] no explanation for the reasons such hours were reduced." (*Id.* at ¶ 34). This reduction in hours resulted in employees not being properly compensated at their hourly rate for all hours worked up to forty during a workweek and not being compensated at an overtime rate for the hours worked in excess of forty. (*Id.* at ¶¶ 45, 61).

The complaint defines the "FLSA Collective" as "all current and former employees of [d]efendants who . . . either maintained two positions and were not paid overtime pay when they worked more than 40 hours in a workweek . . . or whose hours were shaved (thereby reducing the overtime due to them)." (*Id.* at ¶ 6). The first cause of action asserts a claim on behalf of the members of the FLSA Collective arising from Pinnacle's failure to properly pay overtime as a result of the two alleged unlawful policies described above. (*Id.* at ¶¶ 37-50).

The complaint also asserts claims under the NYLL. (*Id.* at ¶¶ 7, 51-72). Similar to the FLSA overtime claim, the second cause of action in the complaint asserts a claim pursuant to NYLL Section 160 against defendants for failure to pay overtime as a result of Pinnacle's dual-position and time shaving policies. (*Id.* at ¶¶ 51-57). The third cause of action asserts a claim pursuant to Sections 190, 191, and 663(a) of the NYLL for failure to pay wages for all hours worked by class members as a result of Pinnacle's time-shaving policy. (*Id.* at ¶¶ 58-64). The final cause of action asserts a claim pursuant to NYLL Sections 195 and 661 and applicable regulations for failure to maintain wage records and to provide employees with proper wage notices. (*Id.* at ¶¶ 65-72).

Following the commencement of this action, Christopher Culver ("Culver"), Antonio Hepburn ("Hepburn"), and Brittany Biddle ("Biddle") filed consents to opt into the litigation on September 8, 2020, October 26, 2020, and January 1, 2021, respectively. (Docket ## 22, 29, 34). In his consent, Culver represented that he was a current or former employee of the defendants and that he "was required to work for [d]efendants in excess of forty (40) hours per week without being properly compensated for overtime and all hours worked." (Docket # 22). Similarly, Biddle and Hepburn consented to join the action in order to "contest the alleged failure of [defendants] to pay [them] overtime wages." (Docket ## 29, 34). None of the consents provided any description of the factual bases for their claims. Boyd never sought conditional certification of the FLSA collective, and his counsel represented at oral argument that he does not intend to do so.

After receiving multiple extensions, defendants answered the complaint on October 9, 2020, and amended the answer on October 30, 2020.[1] (Docket ## 6-21, 23-25, 30).

---

[1] The parties executed an agreement to toll the limitations periods applicable to the claims asserted in the original complaint effective November 8, 2019. (Docket # 6). Plaintiffs' counsel also noted at oral argument that

On October 15, 2020, this action was referred to the undersigned for all non-dispositive pretrial matters. (Docket # 26). This Court issued a scheduling order on November 18, 2020, which set January 29, 2021, as the deadline for filing motions to amend the pleadings. (Docket # 32 at ¶ 3).

The parties began mediation on January 9, 2021. (Docket # 41-1 at 3). Although terms of a settlement were reached between defendants and named plaintiff Boyd and opt-in plaintiff Biddle, no settlement was reached between defendants and opt-in plaintiffs Culver and Hepburn. (*Id.*). On April 20, 2021, plaintiffs filed a letter seeking leave to amend the complaint to continue the action on behalf of Culver and Hepburn. (Docket # 36 at 2). Defendants responded by letter dated April 26, 2021, refusing to stipulate to an amended complaint. (Docket # 38 at 1). Plaintiffs filed the pending motion on May 26, 2021. (Docket # 41). On August 3, 2021, plaintiffs filed a motion seeking judicial approval of the proposed settlement of Boyd's claims and Biddle's claims, which remains pending before the district court. (Docket # 52).

Review of the proposed amended complaint reveals that it removes the class action allegations, removes Boyd as plaintiff, and deletes the factual allegations relating to his claims. (Docket # 41-3). The proposed amended complaint instead identifies Culver and Hepburn as the named plaintiffs and asserts FLSA and NYLL claims on their behalves. (*Id.*).

With respect to Culver, the proposed amended complaint alleges that he was employed at Pinnacle as a baseball/softball director from June 4, 2017 through July 28, 2019. (*Id.* at ¶¶ 16-17). According to Culver, he routinely worked approximately sixty hours per week and was paid a weekly salary of between $600 and $1,035 during the period of his employment. (*Id.* at ¶¶ 20-21). Culver maintains that defendants misclassified him as an exempt employee

---

the limitations periods applicable to the claims of the opt-in plaintiffs were tolled as a matter of law upon the filing of their opt-in consents.

and, consistent with the misclassification, failed to pay him at an overtime rate of pay for hours over forty that he worked during a workweek. (*Id.* at ¶ 3). He also maintains that defendants failed to provide him with an accurate wage notice when he was hired and accurate wage statements when he was paid. (*Id.* at ¶¶ 24-25).

Regarding Hepburn, the proposed amended complaint asserts that he was employed by defendants as a facilities worker from February 18, 2018 through January 13, 2019. (*Id.* at ¶¶ 26-27). Hepburn alleges that Bree also directed him to perform maintenance and yard work at Bree's personal residence and farm. (*Id.* at ¶ 29). Hepburn maintains that he routinely worked seventy-two hours per week, but Cardarelli shaved his hours, depriving him of compensation for hours actually worked and/or overtime compensation for hours worked in excess of forty during a workweek. (*Id.* at ¶¶ 32-34). Hepburn alleges that he was not provided with accurate wage statements as a result of defendants' time-shaving practices. (*Id.* ¶ 35). Additionally, Hepburn claims that he was not provided with an accurate wage notice at the time he was hired. (*Id.* at ¶ 36).

The proposed amended complaint contains the same four statutory causes of action asserted in the original complaint, although the factual allegations of the first two causes of action alleging unpaid overtime have been modified to delete any references to the dual-position and time-shaving policies upon which the claims are based in the original complaint. (*Compare* Docket # 1 at ¶¶ 37-72 *with* Docket # 41-3 at ¶¶ 37-63). Instead, the causes of action are framed more broadly as general failure to pay overtime claims. (*Id.*).

Although conceding that the deadline for filing motions to amend the pleadings had expired before the pending motion was filed, plaintiffs maintain that good cause supports the requested amendments because they were prompted by the two settlements reached through

mediation. (Docket # 41-1 at 2, 5, 6-9). Plaintiffs represent that the purpose of the proposed amendments is to "assert the allegations of the two remaining party plaintiffs, Culver and Hepburn, and proceed on their beha[lves] with respect to their unresolved FLSA/NYLL claims." (*Id.* at 2). They further assert that they promptly sought leave to amend after the parties finalized the Boyd and Biddle settlements, first by letter and subsequently by this pending motion. (*Id.* at 3, 7-9). According to them, the requested amendments are "more a formality than a necessity as [Culver and Hepburn] have always been party plaintiffs from the date they opted" into the action. (*Id.* at 8-9).

Defendants oppose the motion on the grounds that it is untimely because plaintiffs did not diligently seek leave to amend before the deadline expired. (Docket # 45 at 4-6). According to defendants, neither Culver nor Hepburn fall within the definitions of the class asserted in the original complaint because neither asserts that he was employed in dual positions or that he was subjected to time-shaving. (*Id.*). As defendants interpret the proposed amended complaint, Culver and Hepburn seek to assert claims completely unrelated to those alleged in the original complaint. (*Id.*). Because the proposed amendments seek to assert new and dissimilar claims, defendants continue, Culver and Hepburn should have sought leave to amend the complaint to assert those claims at the time they opted into the action – well in advance of the expiration of the deadline to amend. (*Id.*). In defendants' view, their failure to do so demonstrates a lack of diligence that should not be excused. (*Id.*).

## **DISCUSSION**

It is well-settled in this Circuit that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a

district court has set for amending the pleadings." *See Parker v. Colum. Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (internal citations omitted) (collecting cases). Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Id*. Good cause "depends on the diligence of the moving party." *Id*.; *accord Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) ("[w]hether good cause exists turns on the 'diligence of the moving party'") (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)), *cert. denied*, 562 U.S. 1102 (2010); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997).

The moving party may demonstrate "good cause" by moving to amend promptly after the discovery of new evidence following the scheduling deadline. *See Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, *4 (S.D.N.Y. 2007) (party demonstrated requisite diligence by moving to amend ten days after discovering new evidence through a deposition). Yet, "where the substance of the proposed amendment was known to the movant [earlier in the proceedings], but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16." *380544 Can., Inc. v. Aspen Tech., Inc.*, 2011 WL 4089876, *3-4 (S.D.N.Y. 2011). Thus, a party that inexcusably delays after determining that it wishes to allege new claims, whether by discovering new evidence or otherwise, will not satisfy the good cause standard. *See, e.g., Volunteer Fire Assoc. of Tappan, Inc. v. Cnty. of Rockland*, 2010 WL 4968247, *4 (S.D.N.Y. 2010) (good cause lacking where plaintiff failed to move to amend complaint until four months after advising court that it wished to do so); *Rambarran v. Mt. Sinai Hosp.*, 2008 WL 850478, *3 (S.D.N.Y. 2008) (good cause not demonstrated where plaintiff moved to amend

five months following the deadline and failed to identify the new evidence giving rise to the new claims or when such evidence was discovered); *Lawrence v. Town of Cheektowaga*, 2006 WL 2000124, *3 (W.D.N.Y. 2006) (delay of nearly one year after plaintiff obtained information giving rise to requested amendment defeated motion to amend complaint); *Baergas v. City of New York*, 2005 WL 2105550, *10 (S.D.N.Y. 2005) (two-month delay in filing motion to amend after advising court of intent to do so did not satisfy good cause standard).

In determining whether to grant a motion to amend, the court must weigh the good cause shown for the delay against the prejudice to the non-movant that will result from the amendment. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d at 244; *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983). Considerations of prejudice include whether the new claim would (i) require significant additional discovery; (ii) significantly delay the resolution of the dispute; or (iii) prevent the non-moving party from bringing a timely action in another jurisdiction. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (collecting cases). "However, the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b)." [2] *Woodworth v. Erie Ins. Co.*, 2009 WL 3671930, *3 (W.D.N.Y. 2009) (emphasis and internal citations omitted).

On the record before me, I find that Hepburn has demonstrated good cause to amend the complaint to be included as a named plaintiff and to assert the factual allegations underpinning his FLSA and New York state law claims. Contrary to defendants' contention that Hepburn does not claim to have been subjected to time-shaving practices (Docket ## 44 at ¶ 6;

---

[2] Quoting *Pasternack v. Shrader*, 863 F.3d 162 (2d Cir. 2017), plaintiffs maintain that "the rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." (Docket # 41-1 at 9). However, as explicitly noted by the Second Circuit, the *Pasternack* decision did not involve "any allegation of untimeliness based on a scheduling order." *Pasternack v. Shrader*, 863 F.3d at 174. As explained by the Second Circuit in *Pasternack*, "where a schedule has limited the time to amend a complaint, the plaintiff who wants to amend must satisfy Rule 16 by showing 'good cause' to modify the scheduling order." *Id.* at 174 n.10.

8

45 at 3), review of the proposed amended complaint demonstrates that Hepburn asserts just that: "Cardarelli would report Hepburn's hours to be fewer than the hours he actually worked, which effectively shaved time from the total hours he worked each week" (Docket # 41-3 at ¶ 32). This time-shaving practice is the same practice that the original complaint alleged that Cardarelli had committed. (Docket # 1 at ¶ 34 ("Cardarelli would routinely reduce [Boyd's] hours at her whim and provide no explanation for the reasons such hours were reduced")).

    I also find that Hepburn acted with diligence upon learning of the anticipated settlement by Boyd, the sole-named plaintiff in this action. The submissions suggest that sometime between January 9, 2021 and April 20, 2021, the parties agreed, subject to approval by the court, to settle the claims of Boyd and Biddle. (Docket # 41-2 at ¶¶ 2-3, 5). On April 20, 2021, counsel for plaintiffs notified the Court of the anticipated settlement and requested leave to file an amended complaint. (Docket # 36). After defendants communicated their refusal to consent, plaintiffs filed the pending motion on May 26, 2021. (Docket # 41). On this record, I find that Hepburn has acted with diligence. *See*, *e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2013 WL 1703529, *4 (E.D.N.Y. 2013) (finding diligence where plaintiff sought leave to amend six weeks after learning of bases for amendment), *report and recommendation adopted in part*, 2014 WL 991715 (E.D.N.Y. 2014); *Enzymotec Ltd v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) ("filing a motion to amend within two months of acquiring the information is sufficient to show diligence"); *Permatex, Inc. v. Loctite Corp.*, 2004 WL 1354253, *3 (S.D.N.Y. 2004) (finding diligence where plaintiffs moved to amend almost two months after deposition revealed new information).

    In addition, the proposed amendments relating to Hepburn would not be unduly prejudicial. As noted above, Hepburn's claims arise out of the same allegedly unlawful

9

time-shaving policy challenged in the original complaint, and defendants have been on notice of Hepburn's claims since he opted in to the action in October 2020, prior to defendants' service of their amended answer. Although this case has been pending for more than two years, defendants did not file their answer for more than a year after the complaint was filed, and the pending motion was filed approximately six months later. Under these circumstances, I find that plaintiffs should be permitted to amend the complaint to include Hepburn as a named plaintiff and to assert the proposed factual allegations relating to him.[3]

I reach a different conclusion with respect to the proposed amendments relating to Culver. Plaintiffs characterize their motion to amend as a mere formality prompted by Boyd's anticipated settlements. (Docket # 41-1 at 5). Broadly construing the claims in both the original and proposed amended complaint as claims for "failure to pay overtime for hours worked over forty in a workweek in violation of the FLSA/NYLL" (Docket # 46 at 3), plaintiffs assert that they "seek[] leave to amend the Complaint not to add any additional claims or any additional parties, but rather so that the action may proceed on behalf of the two opt-in [p]laintiffs."[4] (*Id.* at

---

[3] Generally, when a party seeks to amend a complaint to add a plaintiff, the propriety of the proposed additional party must also be evaluated under Rule 20(a) of the Federal Rules of Civil Procedure, which governs joinder of additional parties. *See* Fed. R. Civ. P. 20(a). Here, plaintiffs note that Hepburn is already a party plaintiff in this action by virtue of his opt-in consent, and defendants have not opposed the addition of Hepburn to the action under Rule 20(a). In any event, to the extent Rule 20(a) applies, I find that the addition of Hepburn as a named plaintiff is proper because his proposed claims arise out of the same transaction or occurrence as those pled in the original complaint. *See Lopez v. Setauket Car Wash & Detail Ctr.*, 2015 WL 136336, *2 (E.D.N.Y. 2015) (granting motion to amend to add opt-in plaintiff as named plaintiff; "[t]he [c]ourt finds that [the opt-in plaintiff's] claims arise out of the 'same transaction, occurrence or series of transactions or occurrences' as those outlined in the complaint, and that this action involves questions of law or fact that are common to all [p]laintiffs, including [the opt-in plaintiff]"); *McLean v. CVS Pharmacy, Inc.*, 2010 WL 3827940, *4 (D. Conn. 2010) (granting motion to amend to add opt-in plaintiffs as named plaintiffs where plaintiffs "all claim misclassification and deprivation of overtime pay under the FLSA by operation of the corporate-wide policies").

[4] Boyd maintains that because Culver has filed a consent to opt into the lawsuit and therefore enjoys status as a party plaintiff, the pending motion to amend is not necessary for Culver to proceed with his wage claims in this action. (Docket # 41-1 at 5) ("[a]s [Culver] ha[s] been party plaintiff[] to this action since filing [a] consent to join form with this Court on September 9, 2020 . . . , [Culver] seek[s] leave to amend the Complaint as a formality in order to proceed on [his] specific FLSA/NYLL allegations and not those that [Boyd] alleged on behalf of himself and those similarly situated"). Of course, issues as to whether Culver is a proper opt-in plaintiff on the original complaint, or whether he should be dismissed or stricken from the action now that the factual basis for his claims is

10

2). In plaintiffs' view, any claim for unpaid overtime wages – irrespective of its factual and legal bases – is necessarily encompassed within the original complaint. I disagree. *Cf. Gordon v. Kaleida Health*, 299 F.R.D. 380, 406 (W.D.N.Y. 2014) (striking portion of motion that sought to certify rounding claim not asserted in the complaint; "the [c]ourt is bound by . . . the *claims* that can be reasonably read into the complaint, which, here, do not include an unlawful rounding claim[;] [p]laintiffs cannot amend their pleadings by way of the instant Rule 23 motion").

Unlike Hepburn, Culver does not allege that he was undercompensated as a result of unlawful time-shaving or because he was not properly paid for a second position that he

---

clearer, are not before the Court. I am simply addressing whether leave should be granted to file the proposed amended complaint. Moreover, because I find, for the reasons discussed herein, that the motion to amend as it relates to Culver's proposed claims should be denied as untimely, I need not resolve whether Rule 20(a) provides another impediment to amendment by Culver – an issue not raised by defendants or briefed by the parties. That said, I disagree with plaintiffs' contention that the Court is constrained by a party's filing of an opt-in consent to grant leave to assert any overtime or wage claims no matter how dissimilar they may be from those asserted in the complaint. Although counsel is correct that Section 216(b) does not require a determination by the Court to conditionally "certify" the FLSA collective before opt-in consents may be filed, *see Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent"), *cert. denied*, 565 U.S. 930 (2011), Section 216(b), by its very terms, requires that plaintiffs be "'similarly situated' to the named individual who brought the action," *id.* Courts frequently deny opt-in plaintiffs' requests to be substituted or added as named plaintiffs where their claims are not similar to those asserted by the named plaintiffs. *See*, *e.g.*, *Blake v. Batmasian*, 2016 WL 7447253, *4 (S.D. Fla. 2016) ("[d]espite the more stringent standard of Rule 20, [p]laintiff's argument for joinder rests on the bare assertions that the two proposed plaintiffs . . . worked overtime for [d]efendants without compensation and [d]efendants had an alleged policy of not paying overtime[;] [p]laintiff's feeble showing fails to meet the requirement of Rule 20 because the proposed plaintiffs' claims do not arise out of the same 'series of transactions or occurrences as [p]laintiff's claim'"); *Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth.*, 2015 WL 7428537, *3 (D. Mass. 2015) (denying leave to amend to add opt-in plaintiffs as named plaintiffs after denial of motion for class certification; "[p]laintiffs cannot use their [m]otion to [a]mend to circumvent the challenges of class certification"); *Pullen v. McDonald's Corp.*, 2015 WL 10550020, *1 (E.D. Mich. 2015) ("[w]here plaintiffs have failed to meet the [less] stringent standard for conditional certification, courts have found joinder of opt-ins unwarranted"); *Botero v. Commonwealth Limousine Serv. Inc.*, 302 F.R.D. 285, 287 (D. Mass. 2014) ("[t]he 'similarly situated' standard for conditional certification under § 216(b) of the FLSA is, in fact, more elastic and less stringent than the requirements found for [Rule 20(a) joinder][;] . . . [j]oinder is thus not warranted here because plaintiff has already failed to convince this Court that the experiences of the [proposed plaintiffs] are susceptible to FLSA class treatment[;] [a]s such, it can hardly be said that the factual scenarios of the 14 'opt-ins' stem from the same 'transaction or occurrence' or 'share an aggregate of operative facts'") (internal quotations and citations omitted); *Yerger v. Liberty Mut. Grp., Inc.*, 2012 WL 4423499, *3, *5 (E.D.N.C. 2012) ("if a plaintiff fails to meet section 216(b)'s flexible, elastic standard as to a class of individuals, the plaintiff necessarily fails to satisfy Rule 20's stricter standard as to any individual in that class . . . because [the named plaintiff] has failed to demonstrate that she is similarly situated to any other [opt-in plaintiff], she necessarily fails Rule 20's 'same transaction, occurrence, or series of transactions or occurrences' standard as to [the opt-in plaintiffs][,] . . . [and] [plaintiff] therefore cannot join [the opt-in plaintiffs] as named plaintiffs in this case").

worked – the specific and only policies challenged in the original complaint. Rather, Culver seeks to assert an entirely new theory of liability – that he was improperly classified as exempt from the overtime requirements applicable to hourly employees and was paid a weekly salary that undercompensated him for his hours worked. In FLSA cases like this one, courts have repeatedly recognized that unpaid overtime claims by employees misclassified as exempt are distinct from unpaid overtime claims by non-exempt employees. *Stockton v. Alltite, Inc.*, 2016 WL 3973778, *3 (D. Kan. 2016) ("[a]n FLSA claim by an exempt employee is distinct from that of the non-exempt employee") (internal quotation omitted); *Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, *12 (S.D.N.Y. 2012) ("[w]here a collective action contains a mix of employees, some of whom are classified [as] exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations"); *Kinnett v. State of Kan.*, 1991 WL 241832, *1 (D. Kan. 1991) ("although the remedy is the same and the claim is brought under the FLSA, the factual basis for the claim between exempt and non-exempt plaintiffs is different"). Although courts in FLSA actions generally permit amendments to assert additional claims where a "[p]laintiff's additional claims arise from the same operative facts as the original claim," particularly an employer's alleged company-wide employment policy, *see Searson v. Concord Mortg. Corp.*, 2009 WL 3063316, *3 (E.D.N.Y. 2009); *see also Williams v. TSU Glob. Servs. Inc.*, 2018 WL 6075668, *3 (E.D.N.Y. 2018) (permitting amendment where "[t]he issues underlying [p]laintiff's sole additional minimum wage claim revolve around the same nexus of fact as [p]laintiff's other claims"), *report and recommendation adopted by*, 2019 WL 1056273 (E.D.N.Y. 2019); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199, 201 (S.D.N.Y. 2014) (permitting amendment under Rule 16(b) where "plaintiffs' proposed new claims rely on essentially the same facts as were set

out in the original complaint"), denial is more common where the claims sought to be added were not within the original FLSA complaint, particularly where leave was not diligently sought, *see Nunez v. Shinobi NY LLC*, 2013 WL 12107728, *4 (S.D.N.Y. 2013) (denying leave to add time-shaving and spread of hours claims under Rule 16(b) where plaintiffs could have pled those claims in original complaint); *Raposo v. Garelick Farms, LLC*, 288 F.R.D. 8, 10 (D. Mass. 2012) (denying leave to amend to add rounding claim; "plaintiffs have provided no explanation for why they were unable to include those claims in either their [o]riginal or [a]mended [c]omplaint or for their delay in moving to amend"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 2008 WL 2766289, *2 (W.D. Wis. 2008) ("[p]laintiffs characterize their new claims concerning defendant's time clock rounding and editing and lunch break policies as similar to their original claims concerning compensation for time workers spent donning and doffing[;] [b]ecause both arise under the FLSA . . . , plaintiffs argue, justice requires that both the original and new claims be addressed in the same case . . . , [but] the new claims also involve new plaintiffs, facts and collective and class actions that are separate and distinct from the issues, facts and collective and class actions regarding plaintiffs' original claims"). Because Culver's misclassification claim was not pled in the original complaint,[5] Culver should have sought leave to assert it, if not at the time he filed his consent, certainly by the court-ordered deadline for filing motions to amend.

    In this case, Culver delayed nearly seven months after filing his consent and approximately four months after the expiration of the applicable court-ordered deadline to seek leave to amend the complaint to include his misclassification claim. Although Boyd's proposed settlement may have prompted Culver's motion, it does not excuse plaintiffs from the obligation to act diligently, which required that the pending motion be made months earlier than it was. On

---

[5] Culver has not alleged that he was unaware of the facts supporting that claim when he filed a consent to opt into this litigation, and the Court reasonably assumes that those facts were known by him at that time.

13

these facts, I recommend denial of Culver's motion to amend.[6] *See*, *e.g.*, *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order) ("[t]he district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning [information necessitating amendment] failed to demonstrate the diligence necessary to satisfy Rule 16"); *Classicberry Ltd. v. Musicmaker.com, Inc.*, 48 F. App'x 360, 362 (2d Cir. 2002) (summary order) ("[g]iven that the facts underlying [the] new claims were previously known to [the party] and no other justification for the delay is presented, there is plainly no showing of 'good cause' and no abuse of discretion by the district court [in denying leave to amend]").

Moreover, Culver does not offer any compelling reason to permit his proposed amendments despite his lack of diligence. According to Culver, if his request to amend is denied, he will simply commence a new action to assert his misclassification claim against defendants. Indeed, during oral argument Culver's counsel represented that the only real disadvantage to Culver would be the expense of the additional filing fee. As far as Culver's concern for litigation efficiencies, he is also free to move to consolidate any new action with this matter if he believes consolidation is warranted. By contrast, if Culver's claims are added at this stage, discovery would be needed on an entirely new theory of liability and would likely delay the disposition of this action, which was days from the expiration of the discovery deadline at the time the motion was filed. (Docket ## 32, 41). Weighing all these considerations, I recommend that the district court deny the motion to amend as it relates to him.

---

[6] Culver's proposed NYLL claims for unpaid overtime and failure to provide accurate wage notice statements appear to arise from the same facts as his FLSA claim – that he was misclassified as exempt. Accordingly, I find that leave to amend should be denied as to all of Culver's proposed claims.

I turn last to the proposed removal from the original complaint of the class allegations, the inclusion and identification of Boyd as a named plaintiff, and the factual allegations relating to him. At this time, the motion for approval of defendants' settlements with Boyd and Biddle remains pending before the district court, and plaintiffs' counsel represented at argument that he seeks to make the above-identified amendments only in the event that the settlements are approved by the Court. For this reason, I find that the motion for leave to make these particular amendments is premature. Accordingly, this portion of the plaintiffs' motion should be denied without prejudice to renewal in the event that the district court approves the settlement.

## CONCLUSION

For the foregoing reasons, it is my recommendation that plaintiffs' motion for leave to file an amended complaint **(Docket # 41)** be **GRANTED in part and DENIED in part**. Specifically, I recommend that plaintiffs be granted leave to amend the complaint to include Hepburn as a named plaintiff and to assert factual allegations relating to him and be denied leave to include Culver as a named plaintiff and to assert factual allegations relating to a misclassification claim by him. I further recommend that plaintiffs' motion to make any other proposed amendments be denied pending the district court's determination whether to approve Boyd's settlement.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
February 11, 2022

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
           February 11, 2022